John H. Cooke, J.
On the 26th day of September, 1955, the New York State Thruway Authority entered into an Engineering Agreement, H. C. 3559-A, with Charles H. Sells, Inc. The agreement provided for the supervision and inspection of the construction of a portion of the Erie Section of the Thruway and the contract to be supervised was E. T. 55-8, S. T. 55-10, B., C. 55.72; the contractor was Yonkers Contracting Co., Inc.
The agreement with the claimant was negotiated and not a bid contract, with the Yonkers Contracting Co., Inc., contract available during the negotiations. The claimant was to perform the same functions that a State Engineer would perform. The Yonkers. Contracting Co., Inc., contract was incorporated by reference into the claimant’s agreement.
The engineering agreement provided that claimant was to receive 4%% of the complete and final construction cost, excluding, however, costs of acquisition of right of ways, work performed by public utility companies and services performed by the New York State Thruway Authority. In accordance with the final tabulation by the New York State Thruway Authority, claimant was entitled to receive $17,056.14. Claimant contended that the New York State Thruway Authority had granted extensions to Yonkers Contracting Co., Inc., compelling it to expend additional time on the site at additional costs to it and seeks to recover $100,462.80.
Claimant refused payment of $17,056.14, since it would be required to sign a waiver releasing the New York State Thruway *634 Authority. After the claim was filed, a severance motion was made by claimant and a judgment granted reserving the question of the right to interest on the retained percentage for this trial.
The instant claim is for the additional services performed by the claimant due to extensions of time granted by the New York State Thruway Authority and the question of interest on the retained percentage. Claimant bases its claim for the additional services on the agreement itself, or, in the alternative, on the theory of quantum meruit.
Claim No. 37073, timely filed, has not been assigned or submitted to any other court or tribunal for audit or determination.
On the 10th day of January, 1956, the New York State Thruway Authority entered into an Engineering Agreement, H. C. 3606 A, with claimant, Charles H. Sells, Inc. This agreement provided for the supervision and inspection of a portion of the Erie Section of the Thruway. The contract, to be supervised, was E. T. 55-14, S. T. 55-16 and the contractor was Depew Paving Co., Inc.
The Depew Paving Co., Inc., contract was available to claimant during the negotiation of claimant’s agreement. The construction contract was incorporated by reference into claimant’s negotiated agreement. Here too, the claimant was to perform the same functions as a State Engineer and was to be compensated at the rate of 4%% of the complete and final construction cost, excluding, however, costs of acquisition of right of ways, work performed by public utility companies and services performed by the New York State Thruway Authority. Final payment in the amount of $28,314.42, based upon the computation by the New York State Thruway Authority, was not accepted by claimant since claimant refused to sign a waiver releasing the New York State Thruway Authority. Subsequent to filing this claim, claimant moved for a severance judgment, which was granted, reserving the question of interest on the retained percentages for determination at this trial.
Claimant contends that extensions, granted by the New York State Thruway Authority, required it to perform additional services for which it seeks to recover $122,819.92, based upon the terms of the agreement, or in the alternative, quantum meruit.
An additional claim, in the amount of $3,008, is made by claimant for additional work performed by it, alleging that it was furnished improper survey maps.
Claim No. 37075, timely filed, has not been assigned or submitted to any other court or tribunal for audit or determination.
*635 Since both claims concern themselves with extra engineering charges,. and interest on retained percentages, the court, for purposes of brevity, has decided to discuss that portion of Claim No. 37075, with Claim No. 37073. The remaining damage claim contained in Claim No. 37075 for faulty staking and surveying will be discussed subsequently.
In considering these claims, the following provisions contained in the agreement are important:
1 ‘ 2. The Engineers shall provide to the satisfaction of the Chairman or his duly authorized representative, Engineering supervision and inspection services during the entire term of the contract as originally established and during such additional periods of time as may be covered by extensions of time granted thereunder, until the completion and final acceptance of the contract, as follows: * * *
“ The foregoing services by the Engineers are to assure that the work. of the Contractor conforms to the provisions of the Contract documents for the Contract, and the Engineers agree to perform these services.
£ £ 2.1 The Engineers shall take full charge of the supervision and inspection of the Contract and all instructions to the Contractor shall be given by or through the Engineers. The Engineers shall provide sufficient personnel as determined by the Chairman to adequately perform all requirements of this Agreement. The Engineers agree to use all resources at their command to see that the Contract completion date is met and to this end, but without limitation, they shall give constant attention to the adequacy of the Contractor’s personnel and equipment and the availability of his necessary materials and supplies. Time is of the essence under the Contract and it is the Engineers’ acknowledged responsibility, in the first instance, to prevent delays in the Contractor’s construction and purchasing procedures as well as to prevent such progression of these procedures as might lead to delays. Situations incapable of disposition in the field shall be brought to the immediate attention of the Chairman. The Engineers are on notice that no additional fee is payable under this Agreement for supervision and inspection services performed during additional periods of time covered by extensions of time under the Contract ”.
“ 2.4 The Engineers shall compile and submit in accordance with the directions of the Chairman all reports, monthly and final estimates, records, four (4) sets of prints on cloth, (1 additional set for work involving railroads) of the plans showing all changes from contract plans and other pertinent data, photo *636 graphs of various phases of construction and all other data which may be required for proper completion and records of the Contract. A diary shall be kept describing the progress of the work, specific problems encountered and all other pertinent information relative to the execution of the Contract ”.
‘ ‘ 6. The Authority shall pay to the Engineers, and the Engineers agree to accept as full compensation for their services under this Agreement 4%% (Four and one half per cent) of the complete and final construction of the Contract.'
“ 6.1 The Engineers shall be paid in monthly progress payments based upon the value of the construction work progressed by the construction Contractor, as determined and certified to by the Chairman.
‘ ‘ 6.2 The last and final payment to the Engineers, including retained percentages, shall become due and payable upon the actual completion and acceptance of the work under the Contract and the filing by the Engineers with the Chairman of all required records and the final estimate of the Contract.”
It is important to note that the engineering contracts concerned in both claims were negotiated and not bid. Further, at the inception of the contracts, it was understood by all parties that starting dates and completion dates for the engineering contracts were governed by the dates contained in the construction contracts.
■Claimant seeks recovery for additional moneys expended by it for supervision and inspection services performed by it during additional periods of time covered by extensions of time granted to the construction contractors. Its claim is based upon the terms of its contracts, or, in the alternative, on the theory of quantum meruit.
The engineering agreement or contract incorporated the ‘ ‘ contract documents ’ ’ as part of the agreement by reference which according to claimant included paragraph 4 of the information for bidders which provided as follows: ‘ ‘ Engineering Charges, when the work embraced in the contract is not completed on or before the date specified therein, engineering and inspection expenses incurred by the New York State Thruway Authority and/or the Department of Public Works upon the work from the completion date originally fixed in the Contract to the final date of completion of the work may be charged to the Contractor and be deducted by the Authority from the final monies due the Contractor. Consideration of any extra work or supplemental work added to the original Contract, as well as extenuating circumstances beyond the control of the Contractor will be given due consideration by the New York State Thruway *637 Authority before assessing engineering and inspection charges against the Contractor. Such charges will be assessed, however, in cases where the work has been unduly delayed by the Contractor because of unwarranted reasons, insufficient operation, or for any other reason for which the Authority determines the Contractor liable.”
Claimant maintained that in accordance with the above-quoted paragraph 4 of the information for bidders, the New York State Thruway Authority could have charged the contractors for the engineering charges during the extensions granted. The failure to so charge, according to the claimant, constituted a breach of contract entitling it to recover on the basis of quantum meruit in the event the court determines that there is no basis for recovery pursuant to its agreements.
It was conceded by the claimant that paragraph 2.1, above quoted, provided that the work to be performed by the contractors was to be done under the orders of the claimant engineer and that it, the engineer, was to act as a conduit of orders from the New York State Thruway Authority to the contractors. However, claimant contended that the New York State Thruway Authority retained unto itself the punitive powers to enforce compliance by the contractors, leaving the claimant engineer powerless to comply with its contractual obligations in the event the New York State Thruway Authority refused or failed to exercise its punitive powers.
There is no dispute that the starting date and termination date of the construction contracts governed the engineering contracts, but claimant maintained that this provision was only to insure continuous engineering services, but did not restrict its right to compensation for periods covered by extensions of time.
The court has elected to discuss both claims as one since the issue is basically the same, although factually there are minor differences. In Claim No. 37073, Yonkers Contracting Co., Inc., came on the job about one month late, was poorly organized, lackadaisical in procuring material and generally slow and sloppy in its operation. Yonkers Contracting Co., Inc., apparently never worked overtime nor did it permit its paving subcontractor to work overtime. There was evidence that the paving contractor performed no work during 1956. It further was evident that Yonkers Contracting Co., Inc., had another contract in the area which apparently deterred a full effort being expended on this contract.
In Claim No. 37075, Depew Paving Co., Inc., had expended a maximum effort to complete the contract in accordance with the *638 contract terms. Claimant praised the construction contractor as evidenced in part by a letter from claimant to the District Engineer, State’s Exhibit D, and in the last paragraph stated: “ I repeat again that just about every practical effort and trick was turned by the contractor to try to expedite the job and get the best job he could regardless of weather conditions. I look for the best of progress in the spring with any kind of weather, and I think that the requested allotment of time they request is fair and just ”.
Claimant’s Exhibit 16, Claim No. 37075, the weekly construction reports constantly refer to poor weather and material shortages. The conditions as existed in 1956 prevailed in 1957, in Claim No. 37075.
To further complicate the .problem, a cement strike occurred in 1957.
In Claim No. 37075, the extensions, complained of, which are the basis of that portion of the claim, were recommended by claimant.
Both claims concern themselves with construction contracts in the same geographical area and needless to say were affected by the same weather conditions.
The question for determination is, therefore, can claimant recover for expenditures made by it to assure continual engineering services during extensions of time granted by the Authority?
The court is aware of the case of Tippetts-Abbett-McCarthy-Stratton v. New York State Thruway Auth. (27 Misc 2d 522, mod. 18 A D 2d 402) and the affirmance of the Appellate Division, Third Department by the Court of Appeals (13 N Y 2d 1091). In the Appellate Division case (supra, pp. 403-404) the court stated:
1 ‘ Claimant contends that these extensions constituted a breach by the Thruway of its engineering contract and has had judgment in the Court of Claims. We take a different view and hold that the Authority did not breach the claimant’s engineering contract by extending the time of the prime contractor’s performance.
“We look first to the direct contractual obligation between claimant and the Authority. Although the agreement between claimant and the Authority stated that it should be deemed to include ‘ the agreement ’ between the Authority and the prime contractor, there was no stated date within which claimant was to perform the supervisory contract; and no agreement by which the Authority undertook to assure claimant that the prime contractor would finish its work on June 1, 1955.”
*639 In these claims before the court, the negotiated agreements, concededly incorporated the prime construction contracts by reference, but further specifically in paragraph 2, above quoted, are to perform ‘1 Engineering supervision and inspection services during the entire term of the Contract as originally established and during such additional periods of time as may be covered by extensions of time granted ’ ’, and in accordance with paragraph 2.1 “ are on notice that no additional fee is payable under this Agreement for services and inspection services performed during additional periods of time covered by extensions of time under the Contract.”
Claimant had a contractual obligation to function in the same capacity as a State Engineer to assure completion of both contracts within the time schedule since time was of the essence.
In Claim No. 37073, claimant was obligated by its agreement to compel the prime contractor to perform its contract, and, in failing to so do within the scheduled time, cannot now seek additional compensation for its nonperformance.
In Claim No. 37075, even though claimant maintained the delay was not occasioned by the prime contractor, but inclement weather and material shortages, it still had a contractual obligation pursuant to its negotiated agreement to remain on the site until final completion.
For the above-stated reasons, the court hereby dismisses that portion of each of the above-captioned claims for extra compensation for engineering, supervision and inspection services allegedly incurred during the extensions of time granted.
The court also dismisses the claims for interest on the retained percentages.
There remains one sole issue and that is for additional compensation for correction in the field of certain alleged survey errors. The New York State Thruway Authority maintained that, if such errors existed, it was the claimant’s responsibility, under its design contract, to correct the same. The court concurs in the contention of the Authority and accordingly dismisses that portion of Claim No. 37075.
Both Claim No. 37073 and Claim No. 37075 are hereby dismissed and separate judgments should be entered accordingly.